**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES *ex rel.* | ) | |
| | ) | |
| HEATHCOTE HOLDINGS CORP, INC., | ) | |
| An Illinois Corporation, Relator | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.  10 C 1441 |
| v. | ) | |
| | ) | Judge Zagel |
| PROCTER & GAMBLE COMPANY, | ) | |
| A Delaware Corporation, PROCTER & | ) | |
| GAMBLE MANUFACTURING CO., A | ) | |
| Delaware Corporation, and PROCTER & | ) | |
| GAMBLE DISTRIBUTING COMPANY n/k/a | ) | |
| PROCTER & GAMBLE DISTRIBUTING | ) | |
| L.L.C, A Delaware Corporation, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## AMENDED COMPLAINT FOR FALSE PATENT MARKING

Relator, HEATHCOTE HOLDINGS CORP., INC., (herein referred to as "HEATHCOTE"), by its attorneys, hereby complains against DEFENDANTS PROCTER & GAMBLE COMPANY, PROCTER & GAMBLE MANUFACTURING CO., PROCTER & GAMBLE DISTRIBUTING COMPANY n/k/a PROCTER & GAMBLE DISTRIBUTING L.L.C., (herein referred to as "DEFENDANTS") as follows:

### I. NATURE OF THE CASE

1.      This is a *qui tam* action on behalf of the public for false patent marking under 35 U.S.C. §292.  This case does not involve expired patents.  The facts in this case involve DEFENDANTS' actions in falsely marking the packaging of certain Swiffer Sweeper replacement cloths and pads by *over-marking* the packages with patents that did not have claims which covered the replacement cloths and pads.  DEFENDANTS did so with the intent to deceive consumers into believing that the replacement cloths and pads were protected by numerous patents.  DEFENDANTS sought to deceive the public in this manner to suggest to

consumers that Swiffer Sweeper replacement cloths and pads were more technologically advanced than DEFENDANTS' competitors, who could not or did mark their products with any patents or a similar number of patents.

2.      DEFENDANTS over-marked the packaging of replacement cloths and pads by including utility and design patents that did not have claims related to the replacement cloths or pads. Instead, the falsely marked utility and design patents related to the Swiffer mop handle, broom/mop head, and the manner in which the cloths attached to the mop head. As discussed below, these patents should not have been included on the replacement cloth or pad packages because the replacement packages did not contain mops or mop parts.

3.      As discussed below, DEFENDANTS over-marked the Swiffer dry and wet replacement cloths with the intent to deceive the public as part of a multi-faceted scheme which involved consultation with in-house counsel, executives, upper-level management, in-house marketing and research staff and outside marketers, many of whom are identified in this Amended Complaint.

4.      The decision to falsely mark the subject products was not a mistake. Defendants are too sophisticated to *negligently* mark the subject products with inapplicable patents. Rather, the marking of the products was part of a well organized global marketing effort. DEFENDANTS coordinated marketing effort it touted in DEFENDANT P&G's 2000 annual report:

> Swiffer is a good example. This brand is built on a global marketing and technology platform – meaning the product and the marketing programs supporting it can be rolled out worldwide. We've expanded Swiffer faster than any other brand in our history. Our local Market Development Organizations were essential to this. They worked with retail customers and tailored marketing plans to win with local consumers. As a result, we've created a brand with billion-dollar potential.

130013294v2 0909868 57483

5.     Additionally, P&G's Vice President of Beauty and Healthcare declared during a 2007 P&G Analyst Meeting that P&G has "developed unique tools in house to test the power of our package design. This process has helped us develop significant product and package improvements that help communicate functional performance on brands like Swiffer . . . ." During this same meeting, AG Lafley, P&G's Chairman, President and CEO discussed how P&G "invests more than $200 million a year in consumer understanding, we conduct reserch with more than 4 million consumers a year . . . ."

6.     Instead, DEFENDANTS' in-house counsel were instrumental in advising DEFENDANTS to falsely mark the subject products with patents that did not protect the dry or wet replacement cloths.

7.     Against this backdrop, the over-marking of the replacement pads was part of a highly coordinated multi-million dollar advertising campaign which intended to snuff out all competitors and deceive the public. As discussed below, DEFENDANTS marketing of the entire Swiffer product line in an effort win at all costs, regardless of the obligations imposed by 35 U.S.C. §292.

## II. **THE PARTIES**

8.     HEATHCOTE is an Illinois corporation with its principal place of business at 711 Custer Ave., Evanston, Illinois 60202.

9.     DEFENDANTS are corporations established under the laws of the State of Delaware with their principal places of business at One Procter & Gamble Plaza, Cincinnati, OH 45202.

130013294v2 0909868 57483

### III. JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     Venue properly lies in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(c), and 1395(a), because DEFENDANTS' falsely marked products were and are offered for sale and sold in this District.

12.     This Court has personal jurisdiction over DEFENDANTS because they have sold and continues to sell its falsely marked products, in Illinois and in this District and/or in the stream of commerce with knowledge that they would be sold in Illinois and in this District. Upon information and belief, such sales by DEFENDANTS are substantial, continuous, and systematic.

### IV. BACKGROUND FACTS

13.     As set forth below, the persons involved in DEFENDANTS' scheme to violate Section 292 are DEFENDANTS' in-house counsel, as well as DEFENDANTS' executives, upper-level management, in-house marketing and research staff.  The participants also include outside marketers, many of whom are identified below.

14.     The subject patents and the subject products which are identified in Section V of the Complaint.

15.     DEFENDANTS have sold falsely marked products in this district and may continue to do so.  The decision to do so took place at its Corporate Headquarters in Cincinnati, Ohio, among other places.

16.     As described below, DEFENDANTS are highly sophisticated companies who employ highly sophisticated in-house patent lawyers worked.  DEFENDANTS, together with

various executives, upper-level management, in-house marketing and research staff and outside marketers, planned, agreed and conspired to falsely mark the subject products with the intent to deceive consumers into believing that the subject replacement pads were superior to the competition.

17.     DEFENDANTS, together with various executives, upper-level management, in-house marketing and research staff and outside marketers, also planned, agreed and conspired to falsely mark the subject products with the intent to defeat the competition and stifle competition from other inventors.

### A.  Defendants' Public Statements Regarding Its Patents

18.     DEFENDANTS are sophisticated companies and have decades of experience applying for, obtaining, and/or litigating patents.

19.     DEFENDANTS are sophisticated companies and have decades of experience in marketing products to consumers.

20.     DEFENDANT Procter & Gamble's 1999 annual report states the following:

> Connections create breakthroughs. Last year, for example, we were granted more U.S. patents than any of our competitors.  We hold over 25,000 patents worldwide, and this technology base is paying off.

21.     DEFENDANT Procter & Gamble's 2000 annual report states the following:

> P&G holds more than 27,000 patents and applies for 3,000 more each year – or roughly 10 a day!  In fact, we are among the top 10 patent-producing companies in the world – well ahead of any other consumer products company.

22.     DEFENDANT Procter & Gamble's 2000 annual report identifies "P&G's core source of competitive advantage" and goes on to state "P&G's core strength is its ability to build big, leadership brands. Our goal is to continue doing that better and more consistently than any other company in the world."

23.     DEFENDANT Procter & Gamble's 2000 annual report identifies "P&G's core source of competitive advantage" and its "understanding consumer needs":

> A:  P&G's core strength is its ability to build big, leadership brands. Our goal is to continue doing that better and more consistently than any other company in the world.
> Our success in building brands is based on three factors:
> > Understanding consumer needs. We talk with more than 5.5 million consumers worldwide every year. We use a variety of approaches, from in-home visits to concept and product testing via the Internet. In this way, we're able to discover new, unmet and often unarticulated consumer needs.
> > Inventing new product technologies. This is what we call "connecting what's needed with what's possible." We have more than 27,000 patented technologies and, as a result, can simply find more innovative ways to turn our best ideas into improved products that better meet consumer needs.
> > Commercializing and expanding new products globally. On the strength of our marketing and distribution partnerships, we can introduce big, new ideas faster than ever before.
> These capabilities have helped us win with consumers around the world. Shoppers buy P&G products more than 20 billion times a year – which is the basis for a great deal of our confidence in the Company's future, and in the strength of P&G's core competencies as an innovator and marketer.

24.     DEFENDANT P&G's 2000 annual report contains the following statement regarding the Swiffer Product:

> Swiffer is a good example. This brand is built on a global marketing and technology platform – meaning the product and the marketing programs supporting it can be rolled out worldwide. We've expanded Swiffer faster than any other brand in our history. Our local Market Development Organizations were essential to this. They worked with retail customers and tailored marketing plans to win with local consumers. As a result, we've created a brand with billion-dollar potential.

6

25.     DEFENDANT Procter & Gamble Company's 2009 10-K report states:   "The Company is subject, from time to time, to certain legal proceedings and claims arising out of our business, which cover a wide range of matters, including antitrust and trade regulation, product liability, advertising, contracts, environmental issues, patent and trademark matters and taxes."

26.     DEFENDANT Procter & Gamble Company's 2009 10-K report states:

**Trademarks and Patents**. We own or have licenses under patents and registered trademarks which are used in connection with our activity in all businesses. Some of these patents or licenses cover significant product formulation and processes used to manufacture our products. The trademarks are important to the overall marketing and branding of our products. All major products and trademarks in each business are registered. In part, our success can be attributed to the existence and continued protection of these trademarks, patents and licenses."

**Research and Development Expenditures.** Research and development expenditures enable us to develop technologies and obtain patents across all categories in order to meet the needs and improve the lives of our consumers. Total research and development expenses were $2,044 million in 2009, $2,212 million in 2008 and $2,100 million in 2007.

27.     The Procter & Gamble Company's 2009 10-K states: "our continued success is dependent on leading-edge innovation, with respect to both products and operations.  This means we must be able to obtain patents that lead to the development of products that appeal to our consumers across the world."

28.     The Procter & Gamble Company's 2009 10-K states:

Across all of our categories, we compete against a wide variety of global and local competitors. As a result, there are ongoing competitive product and pricing pressures in the environments in which we operate, as well as challenges in maintaining profit margins. To address these challenges, we must be able to successfully respond to competitive factors, including pricing, promotional incentives and trade terms, as well as technological advances and patents granted to competition.

29.     DEFENDANTS' level of sophistication in these areas has led them to aware of the legal rights involving patents.

130013294v2  0909868  57483

30.     DEFENDANTS' level of sophistication in these areas has caused them to conclude that consumers react favorably to technology.

31.     DEFENDANTS' level of sophistication in these areas has led them to believe that the application of patents to certain technologically advanced product lines may cause consumers to buy the subject products and enhance sales.

### B. Defendants' In-House Development of the Swiffer Product

32.     One or more of the DEFENDANTS utilized one or more of the following individuals to assist in the development marketing, promotion and advertising of the Swiffer product.  Based on information and belief[1] and the fact that DEFENDANTS have publicly touted their immense knowledge of consumers, technology and intellectual property, the following individuals have analyzed and discussed consumer preferences with regard to the Swiffer product line, including, but not limited to, the impact that the placement of patents may have on consumers.

### 1. Sonny Jandial

33.     Sonny Jandial is currently employed by DEFENDANT P&G or was previously employed by P&G..

34.     Sonny Jandial is or was as a brand manager with "P&G FutureWorks.

35.     Sonny Jandial, while employed by P&G, led the marketing and launch of Swiffer Dusters.

36.     Sonny Jandial, while employed by P&G, participated in the marketing, promotion and advertising of the Swiffer product.

---

[1]     Plaintiff has been unable to conduct formal discovery given the fact that this Court has stayed discovery.

130013294v2  0909868  57483

### 2. Laura King

37.     Laura King is currently employed by DEFENDANT P&G. or was previously employed by P&G..

38.     Laura King is or was a brand manager for Swiffer.

39.     Laura King worked a brand manager for Swiffer with a global team of six people

40.     Laura while employed by P&G, participated in the marketing, promotion and advertising of the Swiffer product.

41.     Laura King claims that here her team-members "were left to work without a lot of management inspection."

### 3. Rob Steele

42.     Rob Steele was employed by DEFENDANT P&G. as Laura Kings direct superior.

43.     While employed by P&G, Rob Steele participated in the marketing, promotion and advertising of the Swiffer product.

44.     Laura King claims that here her team-members "were left to work without a lot of management inspection."

### 4. Maurice Coffey

45.     Maurice Coffey is currently employed by DEFENDANT P&G. or was previously employed by P&G.

46.     Maurice Coffey is or was the associate marketing director for US Scale Marketing Operations at P&G..

47.     Maurice Coffey claims that "[h]is leadership and vision to push beyond traditional brand marketing has transformed clearing products, like Swiffer, into 'pop icons.'"

130013294v2 0909868 57483

**5. Bryan Radtke**

48.    Bryan Radtke was employed by DEFENDANT P&G, as the brand manager of Household Care Scale.

49.    While employed at P&G, Bryan Radtke led "commercial innovation and CRM projects" for Swiffer, among other products.

50.    While employed at P&G, Bryan Radtke worked in "retail innovation at P&G to lead purchase barrier understanding, loyalty, merchandising strategy and shopper-based design."

**C.  <u>The Role Of Third-Party Marketers And The Swiffer Product Line</u>**

51.    One or more of the DEFENDANTS employed outside companies to assist in the marketing, promotion and advertising of the Swiffer product line.

52.    The following paragraphs identify several outside companies who assisted in the marketing, promotion and advertising of the Swiffer product line.  On information and belief and the fact that DEFENDANTS have publicly touted their immense knowledge of consumers, technology and intellectual property, the following individuals may have analyzed and discussed consumer preferences with regard to the Swiffer product line, including, but not limited to, the impact that the placement of patents may have on consumers.

**1. Jodie Greene of Barefoot Proximity**

53.    Jodie Greene is currently employed by a company known as Barefoot Proximity as an Executive Vice President and was employed by Barefoot Proximity in or around 1998 and 1999.

54.    Jodie Greene worked on launching of the Swiffer product in or around 1998 and 1999.

130013294v2  0909868  57483

## 2. Fran Dicari of Barefoot Proximity

55.     Fran Decari is currently employed by a company known as Barefoot Proximity as a Vice President.

56.     Previously, Fran Decari was employed by P&G.

57.     While employed by Barefoot Proximity, Fran Decari has led the charge on P&G brands such as Febreze, Dawn and Swiffer.

## 3. Doug Worple of Barefoot Proximity

58.     Doug Worple is the CEO and founder a company known as Barefoot Proximity.

59.     Previously, Doug Worple was employed by P&G, in brand management.

60.     While employed by Barefoot Proximity, on information and belief, Doug Worple has participated in the marketing of the Swiffer product.  Relator bases its information and belief on the fact that Doug Worple is the CEO of Barefoot Proximity and a former P&G employee.

## 4. Robert C. Raidt of Leo Burnett USA

61.     Robert C. Raidt is an Executive Vice President with Leo Burnett USA

62.     Robert C. Raidt claims led the operational implementation of a new agency service model on P&G wherein Leo Burnett has been established as the Swiffer Brand Agency Leader (BAL), which has the responsibility of recommending the appointment and then managing all Swiffer partner agencies globally.

130013294v2 0909868 57483

## D. Defendants' Patent Attorneys

63.     One or more of the DEFENDANTS maintain an in-house team of patent attorneys

known as their "Global Legal Department" in Cincinnati, Ohio.

64.     DEFENDANTS have identified their attorneys as follows:

| Reg # | Name | Reg # | Name | Reg # | Name |
|---|---|---|---|---|---|
| 52403 | Addington, Eric | 47616 | Grunzinger, Laura | 31984 | Miller, Steven |
| 44498 | Ahn-Roll, Amy | 41048 | Guffey, Timothy | 56774 | Mueller, Andrew |
| 52463 | Alexander, Richard | 44141 | Hagerty, Andrew | 42917 | Murphy, Stephen |
| 31148 | Bamber, Jeffrey | 56373 | Haughey, Angela | 52555 | Murray, Bridget |
| 51435 | Barry, Amanda | 41501 | Hiland, Emelyn | 50164 | Oehlenschlager, James |
| 58861 | Benjamin, Carrie | 33713 | Howell, John | 34230 | Panichi, Brenda |
| 37513 | Bolam, Brian | 34352 | Hughett, Eileen | 40117 | Pappas, Joanne |
| 57217 | Borgman, Adam | 32994 | Huston, Larry | 33988 | Patel, Ken |
| 37290 | Bullock, Roddy | 59501 | Hymore, Megan | 46405 | Paul, Andrew |
| 44582 | Camp, Jason | 35558 | Johnson, Kevin | 38576 | Peebles, Brent |
| 60583 | Carter, Kathleen | 44175 | Jones, Melody | 57927 | Powell, John |
| 51547 | Charles, Mark | 43709 | Kendall, Dara | 37708 | Roof, Carl |
| 39140 | Chuey, Steven | 59174 | Krasovec, Melissa | 35994 | Rosnell, Tara |
| 32974 | Clark, Karen | 41914 | Krebs, Jay | 58871 | Sia, Ronald |
| 54930 | Clay, Cynthia | 56813 | Leal, George | 44982 | Sivik, Linda |
| 45765 | Colbert, John | 30769 | Lewis, Leonard | 41335 | Stone, Angela |
| 39151 | Cook, Christopher | 41945 | Lin, Michael | 47147 | Upite, David |
| 34804 | Corstanje, Brahm | 60442 | Lipchitz, John | 40855 | Vago, James |
| 42498 | Dressman, Marianne | 52006 | Matson, Charles | 42204 | Vitenberg, Vladimir |
| 56143 | Fayette, Thibault | 48683 | Mattheis, David | 58627 | Wang, Austin |
| 41751 | Fitzpatrick, Matthew | 43780 | Matthews, Armina | 54881 | Ware, Charles |
| 58896 | Foose, Gary | 43784 | McBride, James | 38361 | Weirich, David |
| 57782 | Foust, Amy | 55439 | McConihay, Julie | 52920 | Whitmer, Laura |
| 35145 | Gallagher, William | 43787 | McDow, Kelly | 26598 | Yetter, Jerry |
| 41783 | Glazer, Julia | 34673 | McMahon, Mary | 36069 | Zea, Betty |
|  |  | 47792 | Meyer, Peter | 32323 | Zerby, Kim |

130013294v2 0909868 57483

65.    One or more of the above individuals participated in the decisions to mark the subject Swiffer line of products with one or more of the patents identified in this Amended Complaint.

## VI.  THE SUBJECT PATENTS AND PRODUCTS

### A.  The Dry Sweeping Cloths

66.    DEFENDANTS manufacture, market, and sell a product identified on its packaging as Swiffer Sweeper Dry Sweeping Cloths.

67.    An image of the packaging for a 16 pack "Swiffer Sweeper Dry Sweeping Cloths" is depicted below:



130013294v2 0909868 57483

68.     The packaging for the subject Swiffer Dry Sweeping Cloths lists the following nine patents:  6,797,357; 6,651,290; 6,484,346; 6,305,046; D501,609; D499,887; D489,537; D423,742; and D409,343.  An image of these patents is depicted below:



69.     These nine patents identified above in the Swiffer Sweeper Dry Sweeping Cloths will be identified as the "Swiffer Sweeper Dry Patents".

70.     Other, packaging for the Swiffer Dry Sweeping Cloths (which contained different numbers of cloths) have been marked with Swiffer Sweeper Dry Patents.

71.     The patent number, title and date of issuance of the "Swiffer Sweeper Dry Patents" are as follows:

| Patent No. | Title | Date of Issuance |
|---|---|---|
| 6,797,357 | Three Dimensional Structures Useful as Cleaning Sheets | 9/28/04 |
| 6,651,290 | Cleaning Implements Having Structures for Retaining a Sheet | 11/25/03 |
| 6,484,346 | Cleaning Implements Having Structures for Retaining a Sheet | 11/26/02 |
| 6,305,046 | Cleaning Implements Having Structures for Retaining a Sheet | 10/23/01 |
| D501,609 | Portion of a Cleaning Sheet | 2/8/05 |
| D499,887 | Portion of a Cleaning Sheet | 12/21/04 |
| D489,537 | Cleaning Sheet | 5/11/04 |
| D423,742 | Dusting Mop | 4/25/00 |
| D409,343 | Dusting Mop | 5/4/99 |

14

72.     The 6,651,290 patent ("'290") is attached as **Exhibit A**.  The claims of the '290 patent purport to protect a cleaning implement with a handle, a cleaning head, and at least one attachment structure used to receive and retain a cleaning sheet.

73.     The claims of the '290 patent do not protect to the subject Swiffer Dry Sweeping Cloths.

74.     DEFENDANTS' in-house counsel advised one or more of the DEFENDANTS that the claims of the '290 patent did not protect to the subject Swiffer Dry Sweeping Cloths, but one or more of the DEFENDANTS marked the '290 patent on the packaging of the Swiffer Sweeper Dry Sweeping Cloths.

75.     The 6,484,346 ("346") patent is attached as **Exhibit B**.  The claims of the '346 purport to protect a cleaning implement with a handle, a cleaning head, and at least one attachment structure used to receive and retain a cleaning sheet.

76.     The claims of the '346 patent do not protect to the subject Swiffer Dry Sweeping Cloths.

77.     DEFENDANTS in-house counsel advised one or more of the DEFENDANTS that the claims of the '346 patent did not protect to the subject Swiffer Dry Sweeping Cloths, but one or more of the DEFENDANTS marked the '346 patent on the packaging of the Swiffer Sweeper Dry Sweeping Cloths.

78.     The 6,305,046 ("'046") patent is attached as **Exhibit C**.  The claims of the '046 purport to protect a cleaning implement with a handle, a cleaning head, and at least one attachment structure used to receive and retain a cleaning sheet.

79.     The claims of the '046 patent do not protect to the subject Swiffer Dry Sweeping Cloths

15

80.     DEFENDANTS in-house counsel advised one or more of the DEFENDANTS that the claims of the '046 patent did not protect to the subject Swiffer Dry Sweeping Cloths, but one or more of the DEFENDANTS marked the '046 patent on the packaging of the Swiffer Sweeper Dry Sweeping Cloths.

81.     The D423,742 ("'742") patent is attached as **Exhibit D**.  The '742 patent does not protect the design features of the subject Swiffer Dry Sweeping Cloths.

82.     DEFENDANTS in-house counsel advised one or more of the DEFENDANTS that the claims of the '742 patent did not protect to the subject Swiffer Dry Sweeping Cloths, but one or more of the DEFENDANTS marked the '742 patent on the packaging of the Swiffer Sweeper Dry Sweeping Cloths.

83.     The D409,343 ("'343") patent is attached as **Exhibit E**.  The '343 patent does not protect the design features of the Swiffer Dry Sweeping Cloths.

84.     DEFENDANTS in-house counsel advised one or more of the DEFENDANTS that the claims of the '343 patent did not protect to the subject Swiffer Dry Sweeping Cloths, but one or more of the DEFENDANTS marked the '343 patent on the packaging of the Swiffer Dry Sweeping Cloths.

85.     It has never been DEFENDANTS' practice to mark all products within the Swiffer Sweeper product line with the above identified "Swiffer Sweeper Patents".

86.     It has never been DEFENDANTS' practice to mark all Swiffer Sweeper replacement cloths with the above identified "Swiffer Sweeper Patents".

16

87.     The following chart identifies how DEFENDANTS have marked certain Swiffer dry sweeping replacement cloths or other products within the Swiffer Dry Sweeping line:

| Product Name | Patent Nos. | Copyright |
|---|---|---|
| Swiffer Sweeper 2 in 1 Starter Kit (packaged to hang on an in-store rack) | 6,305,046, 6,484,346, 6,651,290, 6,797,357 6,936,330, D489,537 | 2009 |
| Swiffer Sweeper 2 in 1 Starter Kit (packaged in a box) | 6,305,046, 6,484,346, 6,651,290, 6,797,357 6,936,330 | 2009 |
| Swiffer Sweeper Dry Sweeping Refills 48 Pack | 6,797,357, 6,936,330 | 2009 |
| Swiffer Sweeper Wet Mopping Refills 36 pack | 6,716,805 and "pending patents" | no copyright date identified |
| Swiffer Sweeper Dry Sweeping Refills 32 Pack | 6,797,357, 6,936,330 | 2009 |
| Swiffer Sweeper Dry Sweeping Refills 16 Pack | 6,797,357, 6,936,330 | 2009 |

88.     DEFENDANTS have marked Swiffer Sweeper 2 in 1 Starter Kit packages with Patent No. 6,936,330.

89.     DEFENDANTS have marked Swiffer Sweeper 2 in 1 Starter Kit packages with D489,537.

90.     The D489,537 ("'537") patent is attached as **Exhibit F**.  The '537 patent does not protect the design features of the Swiffer Dry Sweeping Cloths Swiffer Sweeper 2 in 1 Starter Kit.

91.     DEFENDANTS have marked Swiffer Sweeper Dry Sweeping Cloths 48, 32 and 16 count packages with Patent No. 6,936,330.

17

### B. WetJet Cleaning Pads

92. DEFENDANTS manufacture, market, and sell a product identified on its packaging as Swiffer WetJet Cleaning Pads

93. An image of the packaging for Swiffer WetJet Cleaning Pads is depicted below:



94. The packaging for the Swiffer Dry Sweeping Cloths identified above lists the following four patents:  6,101,661; 6,408,123; 6003191; and 5960,508.

18

95.     The subject patents are identified below:



96.     These four patents will be identified as the "Swiffer WetJet Patents".

97.     The patent number, title and date of issuance of the "Swiffer WetJet Patents" are as follows:

| Patent No. | Title | Date of Issuance |
|---|---|---|
| 6,101,661 | Cleaning Implement Comprising a Removable Cleaning Pad Having Multiple Cleaning Surfaces | 8/15/00 |
| 6,048,123 | Cleaning Implement Having High Absorbent Capacity | 4/11/00 |
| 6,003,191 | Cleaning Implement | 12/21/99 |
| 5,960,508 | Cleaning Implement Having Controlled Fluid Absorbency | 10/5/99 |

98.     The 6,048,123 ("'123") patent is attached as **Exhibit G**.  The claims of the '123 patent purport to protect a cleaning implement with a handle and a removable cleaning pad that has a scrubbing layer, absorbent, and/or attachment layer.

99.     The claims of the '123 patent do not protect the subject Swiffer WetJet replacement cleaning cloths.

100.     DEFENDANTS have not consistently marked the Swiffer WetJet replacement cloths with the Swiffer WetJet Patents.

130013294v2  0909868  57483

101. DEFENDANTS have not consistently marked other products within the Swiffer WetJet line with the Swiffer WetJet y Patents.

## V. CAUSES OF ACTION FOR FALSE PATENT MARKING

102. HEATHCOTE, incorporates the above allegations as if fully set forth herein.

103. HEATHCOTE brings this action under 35 U.S.C. §292(b), which provides that any person may sue for civil monetary penalties for false patent marking.

104. As set forth above, DEFENDANTS are sophisticated companies with many decades of experience applying for, obtaining, and litigating patents, and therefore know that patents do not have unlimited scope, but rather, have a scope limited to that which is claimed.

105. Certain patents marked on the products or packaging identified herein have scopes which unmistakably do not cover the product on which such patents are marked.

106. Because the scope of the such patents is unmistakably different than the products on which they are marked, DEFENDANTS cannot have any reasonable belief that such products are patented by such patents.

107. DEFENDANTS know that certain of the products identified herein are marked with patents having scopes which do not cover such products and, therefore, that such products are falsely marked.

108. DEFENDANTS have falsely marked the products described below, with the intent to deceive the public, in violation of 35 U.S.C. §292.

130013294v2  0909868  57483

## COUNT I: THE '290 PATENT

109.    The Plaintiff incorporates Paragraphs 1-108 as if fully set forth herein.

110.    The '290 patent is a utility patent covering a cleaning implement comprising numerous elements not present in the Swiffer Dry Sweeping Cloths product upon which this patent is marked.

111.    DEFENDANTS have violated 35 U.S.C. §292(a) by marking (or causing to be marked), with intent to deceive the public, the packaging of the Swiffer Dry Sweeping Cloths product with the '290 patent.

## COUNT II: THE '346 PATENT

112.    The Plaintiff incorporates Paragraphs 1-108 as if fully set forth herein.

113.    The '346 patent is a utility patent covering a cleaning implement comprising numerous elements not present in the Swiffer Dry Sweeping Cloths product upon which this patent is marked.

114.    DEFENDANTS have violated 35 U.S.C. §292(a) by marking (or causing to be marked), with intent to deceive the public, the packaging of the Swiffer Dry Sweeping Cloths product with the '346 patent.

## COUNT III: THE '046 PATENT

115.    The Plaintiff incorporates Paragraphs 1-108 as if fully set forth herein.

116.    The '046 patent is a utility patent covering a cleaning implement comprising numerous elements not present in the Swiffer Dry Sweeping Cloths product upon which this patent is marked.

130013294v2  0909868  57483

117.   DEFENDANTS have violated 35 U.S.C. §292(a) by marking (or causing to be marked), with intent to deceive the public, the packaging of the Swiffer Dry Sweeping Cloths product with the '406 patent.

## COUNT IV: THE '742 PATENT

118.   The Plaintiff incorporates Paragraphs 1-108 as if fully set forth herein.

119.   The '742 patent is a design patent covering the ornamental design for a dusting mop described in the patent which does not describe the Swiffer Dry Sweeping Cloths product upon which this patent is marked.

120.   DEFENDANTS have violated 35 U.S.C. §292(a) by marking (or causing to be marked), with intent to deceive the public, the packaging of the Swiffer Dry Sweeping Cloths product with the '742 patent.

## COUNT V: THE '343 PATENT

121.   The Plaintiff incorporates Paragraphs 1-108 as if fully set forth herein.

122.   The '343 patent is a design patent covering the ornamental design for a dusting mop described in the patent which does not describe the Swiffer Dry Sweeping Cloths product upon which this patent is marked.

123.   DEFENDANTS have violated 35 U.S.C. §292(a) by marking (or causing to be marked), with intent to deceive the public, the packaging of the Swiffer Dry Sweeping Cloths product with the '343 patent.

130013294v2 0909868 57483

## COUNT VI: THE '537 PATENT

124.    The Plaintiff incorporates Paragraphs 1-108 as if fully set forth herein.

125.    The '537 patent is a design patent covering the ornamental design for a dusting cloth described in the patent which does not describe the dry sweeping cloths contained within the Swiffer Sweeper 2 in 1 Starter Kit upon which this patent is marked.

126.    DEFENDANTS have violated 35 U.S.C. §292(a) by marking (or causing to be marked), with intent to deceive the public, the packaging of the Swiffer Dry Sweeping Cloths product with the '537 patent.

## COUNT VII: THE '123 PATENT

127.    The Plaintiff incorporates Paragraphs 1-108 as if fully set forth herein.

128.    The '123 patent is a utility patent covering a cleaning implement comprising numerous elements not present in the Swiffer WetJet Cleaning Pads product upon which this patent is marked.

129.    DEFENDANTS have violated 35 U.S.C. §292(a) by marking (or causing to be marked), with intent to deceive the public, the packaging of the Swiffer WetJet Cleansing Pads product with the '123 patent.

## DAMAGES

130.    The Plaintiff incorporates and restates the allegations of Paragraphs 1-130.

131.    As set forth above, DEFENDANTS knew that marking their products with false patent statements was and is illegal under Title 35 United States Code.

132.    Each falsely marked product is a separate "offense" pursuant to 35 U.S.C. §292(a).

133.    DEFENDANTS should be assessed fine of up to $500 per offending item sold.

130013294v2 0909868 57483

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against

DEFENDANTS as follows:

(a) A decree that DEFENDANTS have falsely marked products in violation of 35 U.S.C. § 292;

(b) An award of monetary damages, pursuant to 35 U.S.C. § 292, in the form of a civil monetary fine of $500 per false marking "offense," or an alternative amount as determined by the Court, one half of which should be paid to the United States of America;

(c) An accounting for any falsely marked products not presented at trial and an award by the Court of additional damages for any such falsely marked products; and

(d) Such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure Rule 38, Plaintiff hereby demands a jury

trial on all issues triable by jury.

Date: <u>November 11, 2010</u>                    Respectfully submitted,

/s/ James C. Vlahakis

Attorneys for Plaintiff
HEATHCOTE HOLDINGS CORP, INC.

James C. Vlahakis
Matthew J. Canna
HINSHAW & CULBERTSON, LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois  60601
Telephone:  (312) 704-3000
FAX:  (312)704-3001
jvlahakis@hinshawlaw.com
mcanna@ hinshawlaw.com

24

130013294v2 0909868 57483

## CERTIFICATE OF FILING

I hereby certify that on November 11, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.


Respectfully submitted,


By: /s/ James Vlahakis

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000
jvlahakis@hinshalaw.com

130013294v2 0909868 57483